| | |
|---|---|
| Joseph A. Mullaney, III, Esq.<br>**CONSUMER LITIGATION GROUP**<br>Law Office of Dimitrios Kolovos, LLC<br>211 West State Street, Suite 204<br>Media, PA  19063<br>Tel 610-616-5303<br>Fax 610-672-1944<br>Eml JMullaney@ConsumerLitigators.com | Relief sought is <u>less</u> than $150,000.00; this matter is subject to arbitration pursuant to *L. Civ. R.* 201.1.(d)(1) |

**IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW JERSEY
(TRENTON DIVISION)**

| | |
|---|---|
| JENNIFER J. BILODEAU, a citizen of the State of New Jersey,<br><br>        Plaintiff,<br><br>        v.<br><br>CAPIO PARTNERS, LLC, a limited liability company of the State of Texas,<br><br>        Defendants. | DOCKET NO.:<br><br>**CIVIL ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

## INTRODUCTION

Ms. Bilodeau is a defense contractor who relies upon her security clearances for employment under the Department of Defense ("DoD").  Capio Partners ("Capio") alleged she owed an invalid hospital debt that should have been covered by the New Jersey workers compensation system.  After Ms. Bilodeau's attorney contacted Capio and made himself known to it, Capio continued to contact her regarding the disputed debt.  Additionally, Capio promised and represented that it would not report her to the credit reporting agencies if she disputed the alleged

debt. She did dispute, and yet Capio reported her to the credit reporting agencies anyway. When the DoD discovered the negative Capio tradeline on her credit report, she was investigated by the US Army to determine if her security clearance should be revoked. Capio caused Ms. Bilodeau to sustain severe mental distress as a result of its unlawful debt collection activities pursuant to the Fair Debt Collection Practices Act.

## PARTIES

1. Plaintiff JENNIFER J. BILODEAU ("Plaintiff") is a citizen and resident of the State of New Jersey and resides in Monmouth County.

2. Defendant CAPIO PARTNERS, LLC, a limited liability company of the State of Texas, (hereinafter "Capio"), is an artificial person and regularly conducts business in the State of New Jersey and is principally located at 2222 Texoma Parkway, Suite 150, Sherman, TX 75090 and maintains a registered agent of The Corporation Trust Company and a registered address of 820 Bear Tavern Road, West Trenton, NJ 08628.

## JURISDICTION AND VENUE

3. Plaintiff repeats the foregoing Paragraphs as if each were reprinted herein below.

4. Subject matter jurisdiction is proper pursuant to 15 U.S.C. § 1692k(d), 28 U.S.C. § 1331, and 28 U.S.C. § 1337.

5. Personal jurisdiction is proper pursuant to *N.J. Ct. R.* 4:4-4. because the acts, omissions, and damages described herein arose in Monmouth County, New Jersey.

6. Venue in this Court is proper pursuant to 28 U.S.C. § 1391(b) because a substantial portion of the acts, transactions, and occurrences complained of herein occurred in Monmouth County, New Jersey.

## FACTUAL ALLEGATIONS

7. Plaintiff repeats the foregoing Paragraphs as if each were reprinted herein below.

8. On or about September 20, 2006, Plaintiff obtained medical services from Riverview Medical Center ("Riverview") of Newark, New Jersey that were of a personal nature.

9. Said medical services were provided in response to a work-related injury.

10. Said medical services were to be insured and paid by the New Jersey workers compensation system.

11. Riverview knew or should have known that Plaintiff's medical services were to be paid by the carrier for Plaintiff's employer.

12. Riverview should have billed the workers compensation carrier for the authorized medical services, but instead billed Plaintiff's personal health insurance carrier.

13. Plaintiff's personal health insurance carrier paid some of the charges, but did not pay charges that may have been associated with deductibles, co-pays, co-insurance, etc.

14. Had Riverview charged Plaintiff's employer's workers compensation carrier for the authorized medical services, as Riverview was required to do, there would have been no balance for Plaintiff to pay.

15. The remaining balance has been sold and resold to various junk debt buyers.

16. Ultimately, the junk debt was allegedly sold to CF Medical LLC ("CFM").

17. CFM allegedly contracted with Capio to collect the alleged debt.

18. On or about September 3, 2010, Capio mailed a dunning letter to Plaintiff attempting to collect a consumer debt.

19. Said dunning letter stated that the alleged debt was sold to CFM.

20. Said dunning letter stated that Capio was contracted to collect the alleged outstanding balance on behalf of CFM.

21. Said dunning letter stated that if Plaintiff did not dispute the validity of the alleged debt, a negative credit report may be made in Plaintiff's name with one or more credit reporting agencies.

22. Plaintiff relied on Capio's promise and representation that Capio would not report the alleged debt if she disputed it.

23. On or about September 10, 2010, Plaintiff received and viewed said dunning letter.

24. On or about September 10, 2010, Plaintiff's attorneys mailed a letter of representation to Capio at P.O. Box 3498, Sherman, TX 75091.

25. Said letter was received by Capio because it was not returned by the U.S. Postal Service as undeliverable or otherwise.

26. On or about September 10, 2010, Plaintiff's attorneys faxed a letter of representation to Capio's fax numbers of 903-893-4825 and 678-682-3217.

27. Said faxes were received by Capio because the fax confirmation sheets stated that both transmissions were OK and correctly recorded the number of pages transmitted.

28. Said letter and faxes advised Capio, *inter alia*, that Plaintiff's attorneys represented her on the alleged debt, that the alleged debt was disputed, and prohibited Capio from contacting Plaintiff regarding the alleged debt.

29. Upon her attorney advising Plaintiff that he disputed the alleged debt on her behalf, Plaintiff believed and relied on Capio's promise and representation that it would not report the alleged debt in light of the dispute.

30. On or about December 3, 2010, Capio mailed another dunning letter to Plaintiff.

31. Said dunning letter stated the amount Plaintiff allegedly owed.

32. Said dunning letter stated that it was an attempt to collect a debt.

33. Said dunning letter was mailed by Capio despite it knowing or when it should have known that Plaintiff was represented by an attorney.

34. Neither Plaintiff nor Plaintiff's attorneys permitted Capio to contact Plaintiff while represented by her attorneys.

35. In December 2010, Capio reported a tradeline to Experian Information Solutions, Inc. ("Experian") despite Capio's promise and representation that Capio would not to report the alleged debt if Plaintiff disputed the alleged debt.

36. On or about January 8, 2011, Plaintiff mailed a dispute letter to Experian and disputed the Capio tradeline with Experian

37. Said dispute letter provided supporting documents substantiating the invalidity of the alleged debt.

38. On or about January 18, 2011, Experian mailed a letter to Plaintiff in response to her January 8, 2011 dispute.

39. Said Experian letter stated that it was not able to use her supporting documents.

40. On or about January 19, 2011, Experian mailed another letter to Plaintiff in response to her January 8, 2011 dispute.

41. Said Experian letter stated that Capio verified the alleged debt as valid.

42. Said Experian letter verified the Capio tradeline, and Experian refused to delete it from Plaintiff's credit files.

43. At all times relevant and material hereto, Plaintiff is employed as a private defense contractor under the control of the Department of Defense and U.S. Army.

44. At all times relevant and material hereto, Plaintiff must secure and keep security clearances to maintain her employment.

45. At all times relevant and material hereto, as a condition of Plaintiff's continued employment under the Department of Defense and U.S. Army, she must maintain a "clean" credit profile to maintain her security clearances.

46. At all times relevant and material hereto, the Department of Defense and U.S. Army can, will, and does revoke the security clearances of individuals with derogatory credit as threats to national security.

47. On or before February 28, 2011, investigators of the U.S. Army learned that the Capio tradeline appeared on Plaintiff's credit report.

48. Investigators of the U.S. Army investigated Plaintiff specifically because of the appearance of the Capio tradeline.

49. Investigators of the U.S. Army questioned Plaintiff demanding explanations about the Capio tradeline and reminding Plaintiff that her security clearance depends on a clean credit report.

50. Plaintiff sustained great mental distress in learning that she was under investigation and as a result of being questioned by investigators.

51. On or about March 7, 2011, Plaintiff mailed another dispute letter to Experian and re-disputed the Capio tradeline.

52. Said dispute letter provided more supporting documents and information substantiating the invalidity of the alleged debt.

53. On or about March 7, 2011, Plaintiff mailed a dispute letter to Capio and enclosed a copy of her Experian disputes and their supporting documents.

54. Eventually, Experian deleted the Capio tradeline, but not before Plaintiff sustained severe mental and emotional distress as a result of Capio reneging on its promise and representation that it would not report her to the credit reporting agencies if she disputed the alleged debt, and not before Capio contacted her regarding the alleged debt knowing that she was represented by an attorney.

## COUNT ONE
### (Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.*)

55. Plaintiff repeats the foregoing Paragraphs as if each was reprinted herein below.

56. Plaintiff is a "consumer" as defined by 15 U.S.C. § 1692a(3) because the alleged debt arose from personal medical services.

57. Defendant alleged Plaintiff owed a "debt" of a "personal, family, or household" nature as defined by 15 U.S.C. § 1692a(5) by using the mail to dun her for the alleged debt.

58. Defendant is regularly engaged in the third-party collection of defaulted consumer debts as defined 15 U.S.C. § 1692a(2).

59. Defendant engaged in "communication[s]" with Plaintiff pertaining to the alleged debt as defined 15 U.S.C. § 1692a(2) by using the mail to dun her for the alleged debt.

60. Defendant is a "debt collector" as defined 15 U.S.C. § 1692a(6).

61. Without lawful right, Defendant communicated in connection with the collection of the alleged debt with Plaintiff while knowing and being readily able to ascertain the name and address of Plaintiff's attorney in violation of 15 U.S.C. § 1692c(a)(2).

62. Without lawful right, Defendant communicated in connection with the collection of the alleged debt with Plaintiff without the consent of Plaintiff's attorney in violation of 15 U.S.C. § 1692c(a)(2).

63. In connection with the collection of the alleged debt, the Defendant used false, deceptive, and misleading representations and means to collect or attempt to collect the alleged debt in violation of 15 U.S.C. § 1692e(10) when it promised and represented that it would not report Plaintiff to the credit reporting agencies unless Plaintiff disputed the alleged debt.

64. In connection with the collection of the alleged debt, the Defendant used false, deceptive, and misleading representations and means to collect or attempt to collect the alleged debt in violation of 15 U.S.C. § 1692e(10) when it did report Plaintiff's alleged debt to the credit reporting agencies despite having promised and represented that it would not if she disputed the alleged debt.

65. As a direct and proximate result of Defendant's violation of the 15 U.S.C. § 1692, *et seq.*, Plaintiff incurred pecuniary and non-pecuniary damages including severe mental and emotional distress.

**WHEREFORE**, Plaintiff demands that judgment be entered against the Defendant for actual damages, statutory damages, costs, reasonable attorney's fees, interest, and other relief as may be just and proper.

**Plaintiff demands a trial by jury as to all counts.**

> BY: s/Joseph A. Mullaney, III
> Joseph A. Mullaney, III, Esq.
> **CONSUMER LITIGATION GROUP**
> Law Office of Dimitrios Kolovos, LLC
> 211 West State Street, Suite 204
> Media, PA  19063
> Tel 610-616-5303
> Fax 610-672-1944
> Eml JMullaney@ConsumerLitigators.com